UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
DINESH TEKCHANDANI
                                  Plaintiff,


     --Against--


SBARRO CORPORATION
                                  Defendant
------------------------------------------------------x

     Plaintiff, DINESH TEKCHANDANI, by and though his attorneys, LAW OFFICES OF AMBROSE WOTORSON, allege as follows:

     I.     <u>INTRODUCTION</u>

     1.     This is an action pursuant to 42 U.S.C. Sections 1981, Section 296 of the New York Human Rights Law and the New York City Human Rights Law to vindicate the civil rights of plaintiff. Plaintiff contends that the terms, conditions and privileges of his employment relationship with defendant were adversely affected because of his opposition to defendant's discriminatory practices. Indeed, defendant waited for a propitious opportunity to terminate him. Importantly, defendant was on notice that such discrimination previously occurred, company-wide, but defendant apparently did very little, if anything, to prevent its reoccurrence.

     II.     <u>JURISDICTION</u>

     2.     This Court has jurisdiction over this action under 42 U.S.C. Sections 1981, and 28 U.S.C. Sections 1331 and 1343(4). This Court has supplemental jurisdiction over the state claims, as those claims arise from the same operative facts as the federal claims. Venue is proper as the operative events occurred within this judicial district. As well, plaintiff filed a copy of the

instant complaint with the New York City Corporation Counsel's Office and with the New York City Human Rights Commission.

    III.    <u>PARTIES</u>

    3.    DINESH TEKCHANDANI was employed at all relevant times by defendant. He resides at 87-30 62nd Avenue, Apt. 4F, Rego Park, New York 11374 and he sues in his own behalf.

    4.    Defendant, SBARRO CORPORATION, is a private, for profit corporation which conducts business in New York. At all relevant times, it employed plaintiff. It may sue and be sued. Its headquarters is located at 401 Broadhallow Road, Melville, New York 11747.

    IV.    <u>FACTUAL AVERMENTS</u>

    5.    Plaintiff worked for the above named defendant for ten years.

    6.    Plaintiff's' time, attendance and work performance were, at all times, fully satisfactory.

    7.    The terms, privileges and conditions of plaintiff's employment relationship with defendant were adversely affected by retaliation in the following ways:

        a.    Defendant's owners, many of its agents and many of its supervisors, have continuously complained about the "non-Italian appearance" of certain employees. Indeed, defendant's owners, many of its agents and many of its supervisors have pursued a policy and practice of claiming that certain employees are not "presentable," if they are not "Italian-looking," and have typically terminated said employees or have relegated them to

        subservient or altogether less visible and less desirable roles.

b.     Defendant's owners, many of its agents and many of its supervisors have pursued a policy and practice of transferring certain employees away from certain restaurants when said employees are not "Italian-looking."

c.     Defendant's owners, many of its agents and many of its supervisors have also pursued a policy and practice of subjecting employees who have complained about such discrimination, to utterly invalid criticisms about their performance, and have on the whole, refused to give such employees opportunities to improve their performance, when these invalid criticisms are voiced.

e.     Defendant was previously made well-aware of the existence of these illegal practices, and thus, it had a duty to root out, to correct, and to take

        adequate measures to prevent the reoccurrence of discrimination and/or to change negative attitudes which are endemic to the familial and organizational fabric of the Sbarro Corporation.

f.     Plaintiff, Dinesh Tekchandani, worked with defendant for ten (10) or more years as a General Manager. During that time, plaintiff was never disciplined in any regard, and he was consistently told that his

       performance was excellent. Further, plaintiff was extremely loyal for ten or more yeas, as he was one of the few managers who worked without break on September 11, 2001 after the terrorist attack on New York City. As well, he was one of the few managers who worked without a break, during the "blackout" of 2003.

h.   In December 2003, plaintiff's immediate supervisor Souhail Sara, told plaintiff that the wife of one of defendant's owners and agents, JoAnna Sbarro, demanded that he terminate an employee, Rene Pena, because he is a very dark-skinned Hispanic, and critically, because he is not "Italian looking."

i.   Plaintiff discussed this with his Assistant General Manager.

j.   Plaintiff, along with his Assistant General Manager, decided to refuse Sara's demands that he terminate Rene Pena, as Sara's justification for doing so was completely discriminatory. Still, Sara persisted, and plaintiff refused to acquiesce to Sara's discriminatory demands.

k.   On or about February 12, 2004, whilst Sara was present at defendant's 5th Avenue store that plaintiff managed, a City Health inspector arrived and performed a a surprise inspection. Sara did not assist plaintiff in

any regard, and in fact, he left the premises after fifteen (15) minutes, and the inspection proceeded without Sara's being present.

l. Plaintiff's restaurant was found to have had health code violations which were to be corrected in one month.

m. The Department of Health did not deem the restaurant to be in such a terrible state that closure was necessary. Indeed, the restaurant remained open and was permitted to operate while the alleged health code violations were remedied.

n. Moreover, while plaintiff's restaurant had been subjected to Health Inspections before, this was the first instance in which violations of any sort had been found.

o. In any event, the Department of Health informed defendant and plaintiff that it would return to re-inspect the restaurant on February 27, 2004 or sometime thereafter.

p. Plaintiff promptly remedied the alleged health code

1   violations.

q. However, on or about February 26, 2004, after plaintiff had already remedied the alleged health code violation, and prior to the next scheduled Department of Health inspection, defendant summarily terminated plaintiff's employment without any warning whatsoever. On information

        and belief, plaintiff was actually terminated, in part, because of his opposition to defendant's practice and policy of mistreating employees who are not "Italian-looking."

    r.    In fact, plaintiff whose national origin is Indian, is dark-skinned and he is not "Italian-looking." On information and belief, plaintiff was replaced by a male who has a Mediterranean and/or Middle Eastern appearance, and thus, arguably, is "Italian-looking."

    s.    Moreover, on information and belief, other Sbarro restaurants have been closed or have been found to be in violation of various health codes, but the General Managers of these restaurants have rarely, if ever, been terminated because the restaurant they managed had health code violations.

    t.    On information and belief, the restaurant which plaintiff managed passed its health inspeciton on March 3, 2004 because plaintiff had previously remedied the alleged violations.

8.    Plaintiff has been unable, despite reasonable efforts, to find comparable employment and/or to ameliorate his employment situation.

9.    As a proximate result of defendant's discriminatory acts towards plaintiff, plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, promotional opportunities and other employment benefits.

10.    As a further proximate result of defendant's discriminatory actions towards

plaintiff, plaintiff has suffered and continues to suffer impairment and damage to his good name and reputation built up with Sbarro after ten years of employment.

11. As a further proximate result of defendant's actions, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

12. The conduct of defendant has been outrageous and malicious, and was intended to injure plaintiff, and said actions were undertaken with reckless indifference to plaintiff's protected civil rights, entitling plaintiff to an award of punitive damages. Indeed, defendant was on notice that such behavior previously occurred, company-wide, but defendant apparently did very little, if anything, to prevent its reoccurrence.

V. <u>CAUSES OF ACTION</u>

<u>FIRST CAUSE OF ACTION</u>

13. Plaintiff hereby repeats and realleges each allegation contained in each an every paragraph above.

14. By adversely affecting the terms, conditions and privileges of plaintiff's employment because of his color and his opposition to defendant's company-wide and systemic discriminatory practices, of which defendant had previously been made aware, defendant has violated 42 U.S.C. Section 1981.

<u>SECOND CAUSE OF ACTION</u>

15. Plaintiff hereby repeats and realleges each allegation contained in each an every paragraph above.

16. By adversely affecting the terms, conditions and privileges of plaintiff's employment because of his color and his opposition to defendant's company-wide and systemic

discriminatory practices, of which defendant had previously been made aware, defendant has violated Section 296 of the New York Human Rights Law.

### THIRD CAUSE OF ACTION

17. Plaintiff hereby repeats and realleges each allegation contained in each an every paragraph above.

18. By adversely affecting the terms, conditions and privileges of plaintiff's employment because of his color and his opposition to defendant's company-wide and systemic discriminatory practices, of which defendant had previously been made aware, defendant has violated the New York City Human Rights Law.

VI.    PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court grant judgment to them containing the following relief

    a. An award of plaintiff's actual damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including an award of front pay compensating plaintiff for loss of future salary and benefits;

    b. An award of damages of an amount to be determined at trial to compensate plaintiff for mental anguish, humiliation, embarrassment, and emotional injury,

    c. An award of punitive damages;

    d. An order enjoining defendant from engaging in the wrongful practices alleged herein;

    e. An award of reasonable attorneys' fees and the costs of this action and,

    f.    Such other and further relief as this Court may deem just and proper.

Dated: Brooklyn, New York
       March 4, 2004

                                                  Respectfully Submitted,

                                                  _____
                                                  Ambrose Wotorson (AWW-2412)
                                                  26 Court Street
                                                  Suite 1811
                                                  Brooklyn, New York 11242
                                                  718-797-4861